### BURRILL et al. v. CROSSMAN et al.

(Circuit Court of Appeals, Second Circuit. December 7, 1898.)

#### No. 1.

1. ACCORD AND SATISFACTION — STATEMENT AND SETTLEMENT OF ACCOUNT — MATTERS NOT INCLUDED.

A stated and settled account is only prima facie evidence of its correctness, and does not preclude the parties from giving evidence that it did not include all the demands between them, nor operate as an accord and satisfaction as to matters not included therein nor considered between the parties prior to its settlement.

2. SAME—SETTLEMENT BY AGENT.

The consignees of the cargo of a vessel chartered by the consignors rendered an account to the agents of the owners of the vessel, in which they credited such owners with the freight, which was payable on delivery of the cargo, and paid the amount thereby shown, taking a receipt therefor. *Held*, that such settlement did not conclude the owners of the vessel as to a claim for demurrage which did not arise from any fault of the consignees, and for which they were not liable, but for which the consignors were liable under the terms of the charter party.

Appeal from the District Court of the United States for the Southern District of New York.

This was an action by William Burrill and others against William H. Crossman and others for demurrage arising under a charter party.

Lawrence Kneeland, for appellants.

Everett P. Wheeler, for appellees.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. Most of the questions arising upon this appeal have been disposed of by this court upon a former occasion (16 C. C. A. 381, 69 Fed. 747), and it remains to be considered whether the defenses of payment and accord and satisfaction are sustained by the proofs. In considering these defenses, we shall treat the case as though Phipps Bros. & Co., the agents of the appellants at Rio Janeiro, had authority, co-extensive with that of the appellants themselves, to make any settlement or compromise with the consignees of the cargo,

in respect of freight and demurrage, which might seem desirable, and as though the consignees, as agents for the appellees, had complete authority in their behalf to settle with Phipps Bros. & Co. for all items arising under the charter, including demurrage as well as freight. The appellees were held liable to the appellants for a balance of freight due under the charter, and, as we have previously held, were also liable for demurrage for the detention of the vessel at Rio Janeiro. After the cargo had been discharged, the consignees rendered to Phipps Bros. & Co. an account with the vessel, crediting her with the amount of "freight as per charter," and charging her with advances, payments, etc., and stating a balance due from them. That balance was paid, and Phipps Bros. & Co. receipted in full. The latter had made no claim against the consignees for the demurrage, although they had been instructed so to do by the appellants. They seem to have been under the impression that because the detention of the vessel had not been caused by the consignees, but by the acts of the revolutionists, the Brazilian government alone was responsible. The master of the vessel had told the consignees that they would have to pay demurrage, and they insisted that there was no liability. The master, however, had no authority to collect demurrage, and the consignees had been instructed not to settle the accounts with the master, but to settle them with Phipps Bros. & Co.

Part payment of an unliquidated demand is not a discharge of the whole, unless accepted upon an agreement or understanding to that effect. The giving of a receipt in full, while evidence of such an agreement, is not conclusive. See Grinnell v. Spink, 128 Mass. 25. In the present case the receipt only purported to be in full of the freight, and "cannot, by any ingenuity, be made to reach other claims." Harden v. Gordon, 2 Mason, 562, Fed. Cas. No. 6,047.

An agreement to accept part of an unliquidated and disputed demand in full satisfaction of the whole demand, executed by the payment of a sum agreed upon, is, of course, a good accord and satisfaction. In this case there was no such agreement, nor was any disputed demand the subject of negotiation between the agents of the respective parties. Although the appellants had instructed Phipps Bros. & Co. to make a claim for demurrage, the latter, acting upon a misapprehension of the validity of the claim, did not do so; and the case stands as though the appellants had contemplated urging, but had never urged it. Neither Phipps Bros. & Co., nor the consignees, supposed that a claim for demurrage was included in the demand which was adjusted. It is insisted for the appellees that the rendition and payment of the account by the consignees and the acceptance of the amount by the appellants has the effect of a stated and settled account between parties. The consignees doubtless supposed, when they rendered their account with the vessel and paid it, that they were paying all demands arising under the charter, and so did Phipps Bros. & Co. Nevertheless, it was the right of the latter, upon the discovery that they had a further valid demand against the consignees, within a reasonable time to insist upon opening the account. An account stated is a mere admission that the account is correct. If the party to whom it is rendered omits to communicate objections to the party rendering it within a reasonable time, an in-

ference may be drawn that he was satisfied with it; but there is no arbitrary rule of law which renders an omission to object in a given time equivalent to an actual agreement or a consent to the correctness of the account thus rendered. An account settled is stronger evidence, and requires more proof to overcome it, than a mere account stated. But the parties are never precluded from giving evidence that the account did not include all the demands between them, unless the case is brought within the principles of an estoppel in pais, or of an obligatory agreement between the parties; as, for instance, where mutual compromises are made. Lockwood v. Thorne, 18 N. Y. 285; Stenton v. Jerome, 54 N. Y. 484. A stated and settled account is only prima facie evidence of its correctness. "It may be impeached by proof of unfairness or mistake in law or in fact; and, if it be confined to particular items of account, it concludes nothing in relation to other items not stated in it." Perkins v. Hart, 11 Wheat. 237.

As a matter of fact, the consignees were not agents for the appellees. They were the purchasers of the cargo. The appellees had chartered the vessel for the voyage from the appellants, and by the terms of the charter party the master was to sign "bills of lading as presented," and the vessel was to have a lien upon the cargo for the freight. By the terms of the bill of lading presented by the appellees, signed by the master and transferred to the consignees, the cargo was to be delivered to the latter upon the payment of the "freight as per charter party"; and the consignees were entitled to the cargo upon such payment, without liability for demurrage, save such as might be occasioned by their own neglect. The detention at Rio Janeiro, for which the demurrage became due under the terms of the charter, was not occasioned by the consignees, but by vis major; and the consignees were not, but the appellees by the terms of the charter were, liable for demurrage. In rendering the account and paying the freight, the consignees were simply rendering and paying their own account, and the appellees can take nothing by their act save as it effected, what it purported, a payment of the freight.

The question whether there was a valid claim against the appellees for demurrage was, under the peculiar facts of the case, a doubtful one. They were not personally at fault, but by the strict terms of the contract became liable for a contingency which was outside the contemplation of either party when the contract was made. Under the circumstances, justice will be satisfied by decreeing the payment of the principal without interest. The proofs show a detention of the vessel, contrary to the terms of the charter, of 53 days, entitling the appellants to demurrage in the sum of $3,151.

The decree of the court below is reversed, with instructions to decree accordingly, with costs.