M. F. LEIGHTON v. BANCAMERICA-BLAIR CORPORATION.[1]

June 29, 1934.

No. 29,896.

[1]Reported in 255 N. W. 848.

*Junell, Driscoll, Fletcher, Dorsey & Barker* and *David E. Bronson*, for appellant.

*Cobb, Hoke, Benson, Krause & Faegre* and *George D. McClintock*, for respondent.

*STONE, Justice.*

After verdict for plaintiff in an action to recover the reasonable value of services rendered, defendant appeals from the order denying its alternative motion for judgment notwithstanding or a new trial.

' While employed by defendant as a securities salesman, plaintiff, in December, 1930, closed a sale of 9,000 shares of First Bank Stock Corporation stock. Circumstances which need not be gone into entitled him to a commission on *quantum meruit.* He wanted 45, defendant conceding that it owed him at least 22½, cents a share. The jury agreed with neither, but allowed plaintiff $1,012.50.

We first note error assigned because a counterclaim was ruled out as matter of law. It was a cross demand for an alleged overdraft of a "drawing account" of which plaintiff had the benefit while in defendant's employ. The agreement was that if plaintiff's commissions in any one month aggregated more than he had drawn he was paid the difference. If his commissions were less than he had drawn, the overdraft was carried over against his next month's commissions. The rule is conceded by defendant to be that, without agreement to repay such overdraft, there can be no recovery. Richmond Dry Goods Co. v. Wilson, 105 W. Va. 221, 141 S. E. 876, 57 A. L. R. 31 (Anno. 33). No such contract appears here. In St.

Anthony Motor Co. v. Patterson, 175 Minn. 624, 221 N. W. 719, where a recovery was allowed, there was such an agreement. Here the drawing account provided merely a minimum monthly compensation, without liability on the salesman to repay if he failed to sell his quota. Defendant's counterclaim was rightly denied as matter of law.

Under ordinary circumstances, the overdraft which is the subject of this counterclaim would be set off against unpaid commissions. But plaintiff's commission was earned in 1930. He was entitled to it, at the latest, at the end of that year. The advances on his drawing account which defendant seeks to offset were made under an entirely different arrangement or contract which governed the parties during 1931. It was a new transaction, so far divorced from the one which makes plaintiff's cause of action that no reason appears for allowing a set-off, against the 1930 commissions, of advances on the drawing account under the new plan of 1931.

■ The main defense is that of supposed accord and satisfaction. Early in the controversy, but after defendant was apprised of plaintiff's claim and the supporting facts and after its acknowledgment of liability for at least 22½ cents a share, it tendered to plaintiff, and he accepted and cashed, a check for $1,678.18 in payment of the amount due him on the basis of defendant's "sales credit record." This did not include commission for 2,000 of the 9,000 shares sold by plaintiff, the sale of which was at one time proposed by defendant to be credited to one Ross, another of its salesmen. Thereafter a commission of 22½ cents was allowed and paid plaintiff on that 2,000 shares. In the case of neither payment did defendant expressly indicate to plaintiff that his acceptance of the checks or either of them would be in liquidation and settlement of his demand. Whether that was the intention of the parties was an issue put to the jury as one of fact. Therein is nothing upon which defendant can predicate error. Payments so made do not operate as settlement and satisfaction unless made upon condition that they shall have that effect. Burrill v. Crossman (C. C. A.) 91 F. 543, 544; Hillestad v. Lee, 91 Minn. 335, 97 N. W. 1055; Duluth Chamber of Commerce v. Knowlton, 42 Minn. 229, 44 N. W. 2;

Preston v. Grant, 34 Vt. 201, 203; Van Dyke v. Wilder & Co. 66 Vt. 579, 29 A. 1016; Eames V. B. Co. v. Prosser, 157 N. Y. 289, 51 N. E. 986.

■ While in defendant's employ plaintiff entered into an executory contract for the purchase of certain stocks from defendant. Not having paid for them in full and wishing to be relieved from the contract, the matter was disposed of October 6, 1931, by a written offer from defendant accepted by plaintiff. The offer made reference neither to plaintiff's claim for commission nor the transaction which was its source. It mentioned only the "present status" of his "subscription account" for the stocks which he had agreed to buy. That account was itemized. Defendant proposed to cancel certain shares and to issue certain others to plaintiff if he would pay the small balance indicated. Defendant asked for confirmation of his "acceptance" and "release of us of any further obligation to you in connection with this contract." Plaintiff confirmed accordingly releasing defendant "from any further obligation to me in connection with this contract." The words "this contract" come nearly if not quite to resolving this point in the plaintiff's favor because they seem rather clearly to refer only to plaintiff's contract for the purchase on his own account of the stocks in question. But the issue was submitted to the jury as one of fact, and there is no ground upon which their answer can be disturbed.

There is argument for defendant pointing out evidence which suggests negotiations between plaintiff and a representative of defendant looking to his release of further claim for commission if defendant would relieve him from his stock purchase agreement. Giving such evidence all weight to which it is entitled, defendant was not entitled to prevail, as matter of law, in view of the integration of the transaction, in terms of its own, already sufficiently gone into.

■ There is an added defense of estoppel. After the payments to plaintiff on account of the 9,000-share transaction, he remained in its employ and was permitted to pile up an overdraft on his drawing account of nearly $2,000. But the record does not show as matter of law that he said or did anything to justify defendant in

believing him satisfied with what had been done with his claim. All along he was protesting to defendant's branch manager that he was not at all satisfied. That the branch manager was without authority to make settlement of plaintiff's claim does not prevent notice to him being notice to defendant. Ordinarily "there can be no estoppel as to facts equally well known to both parties." 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 3189; Clarke v. Milligan, 58 Minn. 413, 59 N. W. 955. Ignorance of the law does not excuse, and defendant knew or should have known whether there had been an accord and satisfaction of plaintiff's demand. An estoppel cannot be based on mere silence unless the circumstances enjoin upon the party to be estopped a duty to declare himself. Macomber v. Kinney, 114 Minn. 146, 154, 128 N. W. 1001, 130 N. W. 851; Dimond v. Manheim, 61 Minn. 178, 182, 63 N. W. 495. If any such circumstances appear from this record, and we have failed to find them, the fact remains that plaintiff was declaring himself plainly and with emphasis from the beginning.

The order appealed from is affirmed.

